IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAURICE HARGROVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-cv-294-MEF |
| ) | [WO – Do Not Publish] |
| CITY OF MONTGOMERY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maurice Hargrove filed a Second Amended Complaint (Doc. # 28) against Defendants the City of Montgomery ("the City") and former Montgomery Police Officer Phoukam Sichanthavong ("Sichanthavong"), alleging numerous causes of action relating to a law enforcement encounter between Plaintiff and Sichanthavong in the parking lot of a local bank as Sichanthavong attempted to respond to a nearby bank robbery. Before the Court is Defendants' Motion for Summary Judgment (Doc. # 49), which has been fully briefed and is ripe for adjudication. After consideration of the evidence submitted by the parties, as well as the arguments of counsel and the applicable law, the Court finds that Defendants' motion is due to be **GRANTED**.

**I. JURISDICTION AND VENUE**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental), and 2201 and 2202 (declaratory relief).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

If the movant satisfies its evidentiary burden, the non-moving party must then establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991);

Fed. R. Civ. P. 56(c). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation and internal quotation marks omitted).

A genuine dispute as to a material fact can be found only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Greenberg*, 498 F.3d at 1263. However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 242 (citations omitted). Likewise, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment[,]" *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, a nonmoving party's "conclusory allegations . . . in the absence of supporting evidence, are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *see also Cordoba v. Dillard's,*

*Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact . . . .") (emphasis in original).

When a nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

On summary judgment, the facts must be viewed in the light most favorable to the non-movant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "'facts as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III.  BACKGROUND

The submitted evidence, construed in the light most favorable to Plaintiff, establishes the following facts.

On April 23, 2008, Plaintiff was a thirty-nine year old black male standing 5'7" and weighing 185 pounds. He had black hair with a fade haircut and a clean-shaven face. That morning, Plaintiff dressed himself in shorts, a black shirt with a colorful design on the front, and a dark blue Boston Red Sox baseball cap. Around noon, Plaintiff and his father set out

in their 1995 Red Jeep Cherokee sport utility vehicle to a Compass Bank branch located on the Atlanta Highway near Eastdale Mall in Montgomery, Alabama.

As Plaintiff and his father waited for teller service at the bank's drive-thru, a Montgomery Police Department ("MPD") officer – not Sichanthavong – arrived as the first responder to a bank robbery that had just occurred at that particular branch of Compass Bank. The officer approached Plaintiff's car and told him to exit the drive-thru and finish his transactions at the next nearest branch, which was not far away. Plaintiff and his father complied with the officer's directive and proceeded to drive to the Compass Bank branch on Coliseum Boulevard.

Meanwhile, a "be on the lookout for" ("BOLO") had been broadcast for a black male suspect, approximately fifty years old, with a gray short afro haircut and mixed gray facial hair. The suspect was wearing a black shirt and a dark blue baseball cap with writing on it and was carrying the stolen property in a white envelope. The BOLO also stated that the suspect was driving a brown Ford truck. At the time the BOLO was broadcast, the suspect had a ten to fifteen minute head start, and was traveling in an unknown direction.

Sichanthavong and other MPD officers began setting up "sweep perimeters" at various points on the way back to the scene in an attempt to locate the robbery suspect. Sichanthavong was traveling eastbound on the Atlanta Highway when he spotted Plaintiff and Plaintiff's father, who were heading in the opposite direction and away from the scene of the crime. Sichanthavong perceived Plaintiff as a possible match to the BOLO

description, and executed a u-turn to make contact with Plaintiff and investigate further. As he turned his patrol car around, Sichanthavong observed the red Jeep Cherokee pull into another Compass Bank branch.

By the time Sichanthavong pulled into the Compass Bank, Plaintiff was standing outside the bank in the parking lot talking on his cell phone. At this point, Plaintiff's and Sichanthavong's factual accounts diverge. Crediting Plaintiff's narrative, Sichanthavong jumped out of his car and pulled his service weapon on Plaintiff, and shouted, "You got a gun! Drop the phone!" Plaintiff terminated his call and dropped his phone to the ground. Sichanthavong informed Plaintiff that he had robbed the first Compass Bank and then "rush[ed] at [Plaintiff] . . . shov[ing] [Plaintiff] into the [nearby] wall." (Hargrove Aff. 2 (Doc. # 52-1).) Sichanthavong then slammed Plaintiff against the same wall again and threatened to deploy his taser, and for a second time accused Plaintiff of being armed. As Sichanthavong placed handcuffs on Plaintiff, he was slammed against the wall a third time.

Sichanthavong then "threw [Plaintiff]" in the back of his patrol car. (Hargrove Aff. 3.) Plaintiff complained that his hands were going numb, but Sichanthavong did not loosen the handcuffs as he transported Plaintiff back to the branch of Compass Bank that had been robbed. Plaintiff was released after the teller excluded him as a suspect. Sichanthavong offered Plaintiff a ride back to the other Compass Bank branch, but Plaintiff declined and set out on foot. Plaintiff soon collapsed in the Eastdale Mall parking lot, and was transported to Jackson Hospital and treated for a herniated disc at C6-7. The treatment included an

anterior cervical diskectomy; an anterior cervical interbody fusion; implantation of PEEK spacers; and anterior cervical plating.  Plaintiff continues to complain of neck pain, and also has an untreated bulging disc at C4-5.

Plaintiff's Second Amended Complaint (Doc. # 28) alleges causes of action for unlawful search and seizure (Count I) and for excessive force (Count II) under 42 U.S.C. § 1983 against both the City and Sichanthavong.  Plaintiff also asserts a number of state law claims:  assault and battery (Count III); False Arrest/Imprisonment (Count IV); a *respondeat superior* theory of liability against the City for Sichanthavong's alleged negligence (Count V); negligence against Sichanthavong (Count VI); and the tort of outrage against both the City and Sichanthavong (Count VII).

## IV.  DISCUSSION

### A. Plaintiff's Federal Claims Against Sichanthavong (Counts I and II)

First, Plaintiff has stipulated to dismissal of his federal claims against the City.  (Doc. # 52, at 2.)  Those claims will be dismissed with prejudice.

To establish § 1983 individual liability, a plaintiff must demonstrate that (1) he was deprived of a right secured by the United States Constitution or a federal statute, and (2) the act or omission causing the deprivation was committed by an individual acting under color of state law.  *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).

For Plaintiff's claims against Sichanthavong in his individual capacity, Sichanthavong has asserted the defense of qualified immunity.  (Doc. # 50, at 5.)  "Qualified immunity

offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee*, 284 F.3d at 1193-94.  The doctrine aims to focus government officials on "'their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Hoyt v. Cooks*, No. 11-10771, 2012 WL 603033, at *3 (11th Cir. Feb. 27, 2012) (published).

The examination of a qualified immunity defense involves a three-part analysis.  First, the officer must establish that he was performing discretionary acts, which is undisputed in this case.  At this point, the court must grant the defendant officer qualified immunity unless the facts taken in a light most favorable to the plaintiff show (1) that there was a violation of the Constitution or federal law and (2) that the illegality of the officer's actions was clearly established at the time of the incident.  In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court instructed the lower federal courts to use sound discretion to decide which of these two prongs to address first.

A determination of whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a general proposition." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).  In other words, "[f]or an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law.'" *Jackson v.*

8

*Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000) (quoting *Lassiter v. Ala. A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)). "The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." *Id.* The requisite clarity is to be gleaned from case law of the Supreme Court of the United States, the Eleventh Circuit, and the Supreme Court of Alabama. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (*en banc*). "[I]f [the] case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).

  1. *Unlawful Seizure (Count I)*

    a. **Investigative Detention or Arrest?**

The parties' first dispute is whether the law enforcement encounter between Plaintiff and Sichanthavong constituted an arrest or an investigative detention. In considering whether an investigative detention was sufficiently limited not to have ripened into a full-scale, de facto arrest, the Court considers the totality of the circumstances surrounding the encounter, *United States v. Espinosa-Guerra*, 805 F.3d 1502, 1506 (11th Cir. 1986), but with an eye toward the following four factors: (1) the law enforcement purposes served by the detention; (2) the diligence with which the officers pursue the investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004).

9

In considering the first factor – the law enforcement purposes served by the detention – "the most important [consideration] 'is whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference.'" *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (quoting *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988)). In this case, the objective of Sichanthavong's detention of Plaintiff was to bring him to the bank that had been robbed, which was only a few miles away, so that the bank teller could quickly exclude or identify Plaintiff as the robber. Such a method was likely to and did, in fact, dispel suspicions against Plaintiff quickly. Thus, this factor weighs strongly in favor of an investigative detention. The second factor, related to the first, also weighs in favor of an investigative detention and not an arrest. Sichanthavong did not delay in transporting Plaintiff to the crime scene, whereupon Plaintiff was expeditiously excluded from being the bank robber.

Regarding the third factor, the Court considers "whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Acosta*, 363 F.3d at 1146 (citing *Michigan v. Long*, 463 U.S. 1032, 1047-48 (1983)). In this case, Plaintiff's version of the facts reveals that Sichanthavong drew his weapon, slammed Plaintiff against a wall several times, handcuffed Plaintiff, and roughly secured Plaintiff in the back of his patrol car, and then drove Plaintiff to the crime scene. The Court first observes that Sichanthavong's actions to ensure officer safety did not expand the scope of the investigative detention. They did, however, make the encounter more intrusive than

10

it otherwise could have been. The Eleventh Circuit has ruled that an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, *United States v. Roper*, 702 F.2d 984, 987-88 (11th Cir. 1983), handcuffs a suspect, *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989), orders a suspect to lie face down on the ground, *Courson v. McMillan*, 939 F.2d 1479, 1492-93 (11th Cir. 1991), or secures a suspect in the back of a patrol car, *Gil*, 204 F.3d at 1351.

In *Jones v. City of Dothan*, the Eleventh Circuit considered a thirteen minute detention of a harassment suspect that unfolded in a similar manner to the present case. 121 F.3d 1456 (11th Cir. 1997). In *Jones*, the suspect, who matched a physical description of a harassment perpetrator, was brusquely detained when the officers "slammed" him against a wall and kicked his legs apart to conduct a pat down search. He was held until the victim arrived on the scene and excluded him. Although not explicitly addressed, the Eleventh Circuit's ruling did not consider the manner in which the detention was accomplished to have fundamentally altered the nature of the law enforcement encounter as a brief investigatory detention. Although the force applied in this case certainly was intrusive to a degree, as it was in *Jones*, it was not intrusive to the point of redefining the encounter between Sichanthavong and Plaintiff.

Finally, the fourth factor is the duration of the detention. As stated above, Plaintiff was transported to the branch of Compass Bank that had been robbed, which was only a few miles away, immediately excluded, and then offered a ride back to the branch of the Compass

Bank branch were he was originally detained. This factor weighs in favor of an investigative detention.

Despite the show of force and actual force employed by Sichanthavong in detaining Plaintiff, the Court concludes that the relatively brief investigative detention was not transformed into a full-scale de facto arrest necessitating probable cause.

### b. Qualified Immunity and Unlawful Seizure

"While an officer who [detains] an individual without [reasonable suspicion] violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007); *see also Terry v. Ohio*, 392 U.S. 1 (1968). Rather, in examining a law enforcement encounter that implicates the Fourth Amendment in a § 1983 action where the officer has invoked qualified immunity, the officer need not prove that probable cause or reasonable suspicion existed as a matter of fact. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). Rather, the officer need only have an *arguable* basis for the seizure. The Eleventh Circuit defines an arguable basis as when "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant[ ] could have believed that probable cause [or reasonable suspicion] existed to arrest [or briefly detain] [the] [p]laintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *see also Jackson*, 206 F.3d at 1166 (applying arguable reasonable suspicion).

Thus, Sichanthavong's detention of Plaintiff was unlawful only if Sichanthavong lacked arguable reasonable suspicion to briefly detain Plaintiff at the time he initiated the

encounter. *Jackson*, 206 F.3d at 1166. Arguable reasonable suspicion existed in this case based upon a comparison of Plaintiff to the BOLO report as well as the circumstances in which Sichanthavong first encountered Plaintiff. First, it should be noted that BOLO reports, so often based upon the fleeting observations of flustered victims and witnesses, do not stand as the unquestioned and definitive truth regarding a suspect's actual appearance. For instance, a person may perceive a red vehicle as brown; a Jeep Cherokee may be a "truck," according to a given person's vernacular; a suspect may appear older or younger to certain individuals than he or she actually is; a diminutive witness may see a 5'7" man as being taller.

Second, Plaintiff's appearance did match the BOLO in some respects. Both Plaintiff and the suspect were middle-aged black males wearing black tee shirts and dark blue baseball caps with writing on them. Furthermore, Sichanthavong's first sighting of Plaintiff was as Plaintiff passed Sichanthavong in a red Jeep Cherokee (perhaps somewhat similar to the BOLO's description of a brown truck), an aspect from which Sichanthavong would not have been able to observe identifiers like height, build, hair color, age, etc. In fact, the identifiers that would have likely stood out to Sichanthavong in such a brief sighting from such a vantage point would have been a black male with a black tee shirt and a blue baseball cap. To compound any suspicion that Sichanthavong had acquired to that point that Plaintiff was the bank robbery suspect, Plaintiff then proceeded to turn his vehicle into another branch of the Compass Bank – the same Compass Bank that had been robbed – and was standing outside the bank in the parking lot on his cell phone. To Sichanthavong or an objective law

13

enforcement officer armed with Sichanthavong's information, this behavior could have been perceived as Plaintiff plotting a second bank robbery of yet another branch of the Compass Bank. *Jackson*, 206 F.3d at 1165; *see also Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).

In conclusion, the Court finds that the law enforcement encounter constituted an investigatory detention and that Sichanthavong possessed the necessary quantum of arguable reasonable suspicion to detain Plaintiff. Sichanthavong is entitled to qualified immunity and judgment is due to be entered in favor of Sichanthavong on Count I.

### 2.   § 1983 Excessive Force (Count II)

The Fourth and Fourteenth Amendments protect criminal suspects from the use of unreasonable force during a seizure by state actors, and such a claim is analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388-95 (1989); *see also Lee*, 284 F.3d at 1197. The reasonableness inquiry requires the court to "carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against 'the countervailing interests at stake.'" *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). As a balancing test tightly yoked to the facts of a particular case, the Fourth Amendment reasonableness inquiry "is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In evaluating the reasonableness of the force applied, the Court must consider the fact pattern "from the perspective of a reasonable officer on the scene with knowledge of the

14

attendant circumstances and facts, and [must] balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). In *Graham*, the Supreme Court listed several guiding factors that have formed part of the Fourth Amendment calculus: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (quotation omitted); *see also Graham*, 490 U.S. at 396.

The reasonableness standard of the Fourth Amendment necessarily offers a wide channel for successful navigation of the variegated encounters between law enforcement and civilians. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. A reviewing court also must be mindful of its proper role in evaluating excessive force claims: "Not every push or shove, even it if may later seem unnecessary in the peace of judge's chambers" violates the Fourth Amendment. *Graham*, 490 U.S. at 396; *see also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (cautioning against employing "the 20/20 vision of hindsight"). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.

Assuming, but not deciding, that amount of force used by Sichanthavong was excessive to the point of making for a constitutional violation, *Pearson*, 555 U.S. at 236, in the context of the qualified immunity analysis, Plaintiff must demonstrate that as of April 23, 2008, the law was clearly established that the amount of force employed by Sichanthavong was excessive. There are two ways for a plaintiff to show that the law was clearly established that a particular amount of force was excessive. The first "is to point to a materially similar case [that has] already decided that what the police officer was doing was unlawful." *Lee*, 284 F.3d at 1198 (internal quotation and citation marks omitted). Plaintiff argues that the force used by Sichanthavong was "clearly excessive," but offers little rationale and, more importantly, no precedent. As stated above, "[t]he burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." *Jackson*, 206 F.3d at 1165 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Plaintiff has failed in his burden to identify a materially similar case in which a constitutional violation was found.

Second, courts have recognized a narrow exception that allows an excessive force plaintiff to overcome the lack of any materially similar cases. Plaintiff may show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee*, 284 F.3d at 1198-99 (quoting *Priester*, 208 F.3d at 926); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (conduct may violate clearly established law even

16

in novel factual circumstances). Under this test, the law is clearly established, and qualified immunity overcome, only if the body of then-existing law would "inevitably lead every reasonable officer in [the defendant's] position to conclude that the force was unlawful." *Priester*, 208 F.3d at 926 (quoting *Post*, 7 F.3d at 1559). Put differently, the facts of this case must be "so far beyond the hazy border between excessive and acceptable force [that every reasonable officer] had to know he was violating the Constitution without case law on point." *Vinyard*, 311 F.3d at 1355.

This is no such case. The case law reveals that for offenses of much lesser severity than bank robbery, police officers are authorized to use physical restraint, handcuffs, and to push suspects. *See Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (no constitutional violation to slam unsecured plaintiff against wall); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (not excessive force to push unresisting plaintiff against wall and apply chokehold in order to secure handcuffs); *Nolin*, 207 F.3d at 1257 (no constitutional violation to grab suspect, push him against a van, search his groin in an uncomfortable manner, and place him in handcuffs).

In cases where the Eleventh Circuit has found the acting of "slamming" a plaintiff a constitutional violation, the facts have been different from those presently before the Court. In *Lee*, the officer had arrested the plaintiff, ostensibly for honking her horn in traffic, and then, *after* the officer had secured the unresisting plaintiff with handcuffs, he slammed the plaintiff's head against the trunk of her car. 284 F.3d at 1199. In *Galvez v. Bruce*, the Eleventh Circuit likewise found a constitutional violation when the officer "repeatedly

17

'slam[med]' [the plaintiff's] body into the corner of a concrete structure" *after* the officer had arrested and secured with handcuffs the plaintiff for misdemeanor offenses. 552 F.3d 1238, 1243 (11th Cir. 2008).[1] In *Slicker v. Jackson*, the plaintiff was arrested for disorderly conduct and secured in handcuffs, *after* which the officers slammed his head against the pavement, kicked him, and knocked him unconscious. 215 F.3d 1225, 1226, 1233 (11th Cir. 2000). The Eleventh Circuit found there to be "ample" evidence supporting a constitutional violation for excessive force. *Id.* at 1233.

These six cases reveal that the Eleventh Circuit has "staked out a bright line," *Priester*, 208 F.3d at 926; Plaintiff just falls on the wrong side of it. In applying the *Graham* factors, the Eleventh Circuit considers the need for the application of force to drop significantly once the suspect is secured in handcuffs. It does not require much elaboration to see that the facts of this case are more similar to *Jones*, *Post*, and *Nolin* than they are to *Lee*, *Galvez*, and *Slicker*. First, unlike the plaintiffs in the latter cases – all of whom were arrested on misdemeanors – Plaintiff was the suspect of a serious felony, bank robbery (a crime often accompanied by firearms), and was standing outside another branch of the same bank. Second, and more importantly, at the time Sichanthavong slammed Plaintiff against the wall several times, Plaintiff had not yet been secured or handcuffed. The crucial distinction between *Lee*, *Galvez*, and *Slicker* and other cases is the fact that the "slamming"

---

[1] *Galvez* was decided several months after the incident in this case and, therefore, does not form part of the relevant body of case law for purposes of determining clearly established law.

18

occurred after the plaintiffs had been handcuffed and were no longer a threat to officer safety or any other person's safety.

Although other reasonable officers may have decided to take a more tactful approach to Plaintiff, the Court is unable to conclude that *every* reasonable officer would have done so in Sichanthavong's circumstances. *Vinyard*, 311 F.3d at 1355. Accordingly, Sichanthavong is entitled to qualified immunity on Plaintiff's excessive force claim, and judgment is due to be entered on his behalf.

**B.     Plaintiff's State Law Claims**

Sichanthavong asserts common law state-agent immunity as well as statutory discretionary-function immunity under Alabama law. "[S]tate-agent immunity under Alabama's common law 'protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.'" *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)); *see also Ex parte Crannan*, 792 So. 2d 392, 405 (Ala. 2000). Alabama law imposes a burden-shifting framework for application of state-agent immunity. The defendant initially bears the burden of demonstrating that he was acting in a function that would entitle him to immunity. *Grider*, 618 F.3d at 1255 (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)). "'If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.'" *Id.* (quoting *Ex parte Estate of Reynolds*, 946 So. 2d at 452). "*Crannan*'s test for state-agent immunity [also] governs whether law enforcement

officers are entitled to statutory, discretionary-function immunity under [Ala. Code] § 6-5-338(a)." *Brown*, 608 F.3d at 741 (citing *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005)). Moreover, where a municipal employee enjoys immunity, the municipality itself is likewise immune as to claims based upon the employee's conduct. *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1131 (Ala. 2000).

Sichanthavong's conduct in detaining Plaintiff for investigatory purposes, including the force applied to effect the stop, qualifies as a function that would entitle Sichanthavong to immunity. *Ex parte Crannan*, 792 So. 2d at 405. Accordingly, the burden at summary judgment falls to Plaintiff to produce evidence beyond the pleadings that creates a material issue of fact that Sichanthavong acted willfully, maliciously, in bad faith, or beyond his authority in the manner in which Sichanthavong detained Plaintiff. Plaintiff has failed to carry this burden and Sichanthavong and the City are entitled to state-agent immunity on all of Plaintiff's state law claims.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 49) is GRANTED and judgment is due to be entered in favor of Defendants on all of Plaintiff's claims.

An appropriate final judgment will be entered.

DONE this 19th day of March, 2012.

                                         /s/ Mark E. Fuller
                                         UNITED STATES DISTRICT JUDGE